WADSWORTH HOLLISTER, APPELLANT, V. WILLIAM H. MANN ET AL., APPELLEES.

FILED MAY 15, 1894.   No. 5378.

Mortgages: ORDER CONFIRMING SALE: REVOCATION: PURCHASER. An order of confirmation is in its nature so far final that a purchaser from the party to whom a deed has regularly issued pursuant to such order is not bound by a subsequent revocation thereof upon proceedings commenced after he has acquired title.

APPEAL from the district court of Webster county. Heard below before GASLIN, J.

*Tibbets, Morey & Ferris*, for appellant.

*B. F. Smith*, contra.

RYAN, C.

This action, though in effect but to try title, was begun and prosecuted as of equitable cognizance. In the brief on behalf of appellant the reasons for applying for an injunction and seeking other equitable relief are thus stated: "The claim of the appellant, as set forth in his pleadings, is want of any title or equity in appellees, and repeated acts

of trespass and threats to continue the same, to the irreparable injury of appellant, and the engendering of a multiplicity of suits." No objection was made by appellees to the presentation and consideration of the matters involved as though properly determinable in equity; indeed, to facilitate the proceedings as though of equitable cognizance, the appellees stipulated with appellant that the affidavits used on the hearing had of a motion to dissolve the temporary injunction should be considered on the final trial of all the issues involved. The title of the appellees was derived through the sale made by a special master under a decree of foreclosure had in the circuit court of the United States for the district of Nebraska. No fuller description of the decree need be made, since both parties claim under it. The sale under which appellees claim was confirmed May 21, 1890, and thereunder the special master executed to Henry G. Koehler a conveyance of the property, of date May 27, 1890, which was duly filed for record two days afterward. On June 2, 1890, Henry Koehler, by his warranty deed, conveyed the property to the German Land & Mortgage Company. This deed was duly filed for record on the day immediately following its date. The German Land & Mortgage Company, by its warranty deed of date June 16, 1890, conveyed the property in dispute to William H. Mann. This deed was duly filed for record on June 19, 1890. The appellees, other than William H. Mann, were made defendants with him; but as their rights are to be measured and limited by his, no further mention will be made of their relations to the matters in controversy. On the 21st day of June, 1890, two days after the deed of William H. Mann was filed for record in Webster county, an order was made by the circuit court of the United States for the district of Nebraska, that if plaintiff should, within ten days, file his written guaranty with the clerk of said circuit court that at a resale the premises would sell for $700 more than at the former sale,

and that complainant would pay the costs of the former
sale, the deed already issued would be canceled, the con
firmation set aside, the sale vacated, and a resale ordered.
On June 30, 1890, the conditions prescribed having been
complied with, a resale of the premises was ordered and
the former sale was canceled. These orders were made
during the same term of court. A notice *lis pendens* was
duly filed in the office of the county clerk of Webster
county. On December 23, 1890, there was executed to
the appellant herein a deed made by the special master in
chancery, which said deed was duly filed for record on the
29th day of December following. The evidence leaves no
room for doubt that immediately upon his purchase Henry
G. Koehler took possession of the lands in dispute, and
that his possession and that of his grantees was undisputed
until about March 1, 1891, when various demonstrations
were made by parties acting in the interest of appellant,
apparently rather as maneuvers for advantage of position
for the purposes of this action than with a view to obtain-
ing possession.

Appellant's first contention is that the appellee William
H. Mann is entitled to no consideration as a *bona fide* pur-
chaser, for, says appellant, the only evidence on this point
is that contained in the affidavit of Mr. Mann, in the fol-
lowing language : "And affiant further says that he pur-
chased said land in good faith and for a valuable consider-
ation, relying upon the title being complete as shown by
said abstract, and without any knowledge or notice of any
kind that any one else claimed any interest in said land."
These statements in the affidavit of Mr. Mann are supple-
mented, as appellant admits, by the following statement in
the affidavit of H. G. Koehler, that " on the 16th of June,
1890, said German Land & Mortgage Company sold said
premises to William H. Mann for a valuable considera-
tion." This case was heard, as stipulated, on " the affida-
vits and other evidence heretofore filed herein, and that

Hollister v. Mann.

said affidavits shall be read as evidence and shall constitute all the evidence in the case," subject to certain enumerated exceptions which are of no importance. The language quoted above was found in affidavits, which, it was stipulated, should be used in evidence. These affidavits had been used on the hearing of a motion to dissolve an injunction, and the stipulation as to their use must have been advisedly entered into by appellant. If there existed a valid objection to the above statements now criticised, the right to insist upon such objection should have been reserved, and it could then consistently have been insisted upon. It is too late now, in the face of this stipulation, to insist that the language quoted embodied a conclusion rather than a fact, even if this criticism under any circumstances was meritorious. The finding of the trial court on this point was, that the defendants (the appellees) "acquired their rights and interest in said land in good faith without notice of any imperfection in title to said premises at the time of the acquisition thereof." This finding in favor of parties who by warranty deeds acquired title and at once went into possession was sufficiently sustained by the evidence to preclude a re-examination in this court of this question.

For the purposes of this case it must be assumed that the appellee Mann derived title through successive conveyances made by two *bona fide* purchasers in possession of the property conveyed, and that he himself was a *bona fide* purchaser for a valuable consideration, for so the trial court found. The appellant's argument is that the federal court had the power to modify its orders at any time during the term at which such orders were made; that appellees were bound to take notice of this power and of the possible action of the court thereunder, and that the confirmation of the sale having been set aside and the sale annulled, the appellees were thereby bound and their title extinguished. The case of *Deputron v. Young*, 134 U. S.,

241, is specially relied on and at length quoted from by appellant to sustain this contention. In this very case it was very significantly observed that "no rights of a third party had accrued during the time that the sale was apparently confirmed." The case of *Scudder v. Sargent*, 15 Neb., 102, is quite instructive, if not an authority in point, on this question. In that case plaintiff had a judgment in the district court of Cass county on the 21st day of November, 1879, declaring the title to the north half of the northwest quarter of section 30, in township 11 north, range 9 east, to be in her, and that defendant Sargent had no interest therein. On January 7, 1880, Sargent, by his attorney, served a notice on plaintiff of a motion to open the said judgment had solely on notice by publication. This motion to open was filed the same day notice of it was given. Afterwards, on January 31, 1880, plaintiff conveyed the real property to John G. Ellinwood. At the April term, 1880, the motion of Sargent to open the judgment was sustained and he was let in to defend. Ellinwood was admitted as a defendant, and, upon a trial had, judgment was rendered in favor of Ellinwood. It was claimed that inasmuch as Ellinwood bought the land after the notice to open the judgment had been filed and notice thereof had been given to plaintiff, Ellinwood was outside the protection given by the statute and bound by the result. LAKE, C. J., delivering the opinion of this court, said: "According to all of the authorities the action in question ceased to be pending upon the rendition of the judgment, in November, 1879, whereby the title to the property was found to be in Mrs. Scudder, the grantor. When was it again pending? Surely not until by the opening of that judgment the controversy which it had settled was renewed. This did not occur until the following April, and in the meantime Ellinwood had invested his money in the land on the faith of the judgment. The judgment rendered in November was a final judgment, nor does the fact that it

was liable to be opened or reversed by proceedings in error deprive it of that character. It fixed the rights of the parties to it and their privies, and while it stood, until it was opened and the controversy renewed, the action cannot properly be said to have been pending within the meaning of the statute."

This court applied the above doctrine in the case of *Keene v. Sallenbach*, 15 Neb., 200. This case owes its weight, not so much to any independent line of reasoning, as to the facts to which the principle announced was held applicable. In 1874, Josiah Keene, a non-resident of this state, was the owner of eighty acres of land in Lancaster county. Hiram B. and Nathaniel S. Keene were sons of Josiah, engaged in business in this state. They became insolvent, and suits were begun against them in Lancaster county and personal service had upon each of them. While the suits were only against the sons, the real property of their non-resident father was attached as the property of the sons. Judgments were rendered against the sons, whereon executions were issued and returned wholly unsatisfied. These judgments were assigned to Clinton B. Jacobs, who filed a creditor's bill against Josiah, Hiram B., and Nathaniel S., seeking to subject the land in controversy to the payment of the judgments against Hiram and Nathaniel. Service of notice of the pendency of· this action was had on Josiah Keene by publication only. The creditor's bill asserted that the attachments were never discharged; that at the date of the levy thereof the real property levied on belonged to Nathaniel S. Keene and Hiram B. Keene, although the legal title to the same was in the name of Josiah Keene, but that Josiah was not the owner and never possessed any interest in the land attached and that the title was placed in Josiah's name by Nathaniel S. and Hiram B. for the purpose of hindering, delaying, and defrauding their creditors. The prayer of the bill was for the exclusion of Josiah Keene from all right, title,

41

or interest in said land, and that it should be subjected to the payment of the aforesaid judgments. A decree was rendered as prayed and the land ordered to be sold as the property of Hiram B. and Nathaniel S., and after confirmation of, and under, such sale the defendant received a sheriff's deed to the property. A successful application was made to open the decree rendered on the creditor's bill on service by publication alone, and upon a trial thereafter duly had it was judicially determined that the land in dispute was the property of Josiah Keene and not of Nathaniel S. and Hiram B. This fact was held not to affect the title of Sallenbach, who, under the statute, was entitled to protection as a *bona fide* purchaser. It is not attempted in this case to extend the special provisions in favor of *bona fide* purchasers found in the statute, giving the right to have opened a judgment rendered on service by publication alone. The analogy which obtains is rather as to the effect of a determination by the court, whether in the form of a final judgment or a final order. As we have seen in *Scudder v. Sargent, supra,* a final judgment leaves pending no action from which notice *pendente lite* is inferable. It seems that the order confirming a sale is, in its nature, just as final, and that thereafter there is pending nothing which would impart notice of what might result, provided proceedings should be commenced to set aside such order of confirmation. If there had been pending a motion to set aside the sale and confirmation before the purchaser thereunder had parted with his title, a question very different from that under consideration would have been presented. In such a case there would have been pending a motion upon consideration of which it might reasonably be anticipated that the sale and confirmation would be set aside. When William H. Mann and his grantor, the German Land & Mortgage Company, received conveyance of the property, there was no action or proceeding pending, consequently there was nothing from which notice could pos-

sibly be inferred by them.  After title had vested by virtue of the deed of the special master, duly authorized and executed, it was held and might be conveyed as might any other title, and a subsequent holder could only be divested thereof by proceedings to which he was a party.  The judgment of the district court is

AFFIRMED.

RAGAN, C., took no part in the consideration or determination of this case.